■ In the Matter of the Claim of EVELYN CONKLIN, Respondent, v. BYRAM HOUSE RESTAURANT, LTD., Appellant, and GREATER NEW YORK MUTUAL INSURANCE COMPANY et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeal by employer, upon the sole issue of insurance coverage, from a decision of the Workmen's Compensation Board filed October 31, 1967 which, among other things, established liability against appellant as a noninsured employer; upon findings " that Notice of Cancellation of the policy by Greater New York Mutual was given to and was in the possession of the employer within the statutory period * * * that notice was in fact received by the Chairman of the Workmen's Compensation Board * * * that the policy by Greater New York Mutual was cancelled in accordance wiht the provisions of Sec. 54, subd. 5 and that said policy was not in force on the date of the accident." Appellant employer contends, among other things, that the carrier failed to prove proper service of notice of cancellation upon the employer and failed, also, to prove filing of the notice with the board or, if filed, the date of filing, within the requirements of the statute, providing that: "No contract of insurance * * * shall be cancelled within the time limited in such contract for its expiration until at least ten days after a notice of cancellation of such contract, on a date specified in such notice, shall be filed in the office of the chairman and also served on the employer", and, further, that: "Such notice shall be served on the employer by delivering it to him or by sending it by mail, by registered letter, addressed to the employer at his or its last known place of business; provided that * * * if the employer be a corporation then the notice may be given to any agent or officer of the corporation upon whom legal process may be served" (Workmen's Compensation Law, § 54, subd. 5). The respondent carrier issued to the employer a policy for the term May 2, 1966-May 2, 1967. The accident occurred July 17, 1966. The carrier contends that it canceled the policy as of July 8, 1966 by sending notice of cancellation to the insured by registered

mail and a copy thereof to the Workmen's Compensation Board, each on or about June 23, 1966. The notice relied upon seems to be a carded summary which contains the following: "DATE CANCELLATION IS TO BE EFFECTIVE *6/21/66* DATE NOTICES OF CANCELLATION WERE SENT TO CHAIRMAN AND EMPLOYER *6/23/66*" Of course, a notice sent on June 23 was ineffective to cancel a policy as of June 21, but it is respondent's contention that, to accord with the hereinbefore quoted statutory provision that no policy "shall be cancelled * * * until at least ten days after a notice of cancellation of such contract * * * shall be filed in the office of the chairman and also served on the employer", respondent's purported notice of cancellation, although improperly stating June 21, 1966 as the effective cancellation date required to be "specified in such notice", may be read instead to specify July 8, 1966; the reason for the selection of this date not appearing, except as it is a date more than 10 days after the notice. Despite the legally recognized difference between *service*, whether personally or by mail, in the case of the employer, and *filing*, in the case of the board, respondent's form indicates that, as respects both, the "notices" were "sent", a fact of some relevance to the discussion that follows. The board found that notice of cancellation was properly given the employer "within the statutory period". As respects notice to the board, however, it may be worthy of note that the board found merely "that notice was in fact received by the Chairman of the Workmen's Compensation Board", with no indication as to when it was received and filed or even that it was timely. It is fundamental law that the statutory requirements for the cancellation of workmen's compensation insurance coverage must be strictly complied with. (See, e.g., *Matter of Bogliolo* v. *Advocate, Inc.*, 31 A D 2d 855, citing *Matter of Horn* v. *Malchoff*, 276 App. Div. 683, 684, mot. for lv. to app. den. 301 N. Y. 814.) As expressed in one case, "We have held that unless it is clearly established that cancellation has been effected just as the statute says it must be, coverage is deemed to have continued." (*Matter of Ward* v. *Red Star Express Lines of Auburn*, 286 App. Div. 471, 473, per Bergan, J.) As respects the form of the notice of cancellation, it is apparent, first, that the requirement that notice be given of cancellation "on a date *specified* in such notice" (emphasis supplied) was not complied with by specification of a date that was two days prior to the notice rather than a date "at least ten days" thereafter; and, second, that the unexplained July 8, 1966 date of cancellation now suggested was not "specified" and certainly was not at the time indicated to the employer or to anyone else. However, in view of the conclusions hereinafter stated, we do not rest our decision on these narrow grounds. Also in view of the conclusions hereinafter stated, we need not pass upon the board's finding that there was sufficient evidence of the proper service of the notice upon the employer by registered mail, a return receipt for mail of some sort being in evidence; despite the absence of any proof by the carrier as to what was mailed. Appellant's argument that the mailed notice must, in order to be valid, be received by an "agent or officer of the corporation upon whom legal process may be served" (Workmen's Compensation Law, § 54, subd. 5) is in error, the provision of subdivision 5 that the notice "may be given" to such a person clearly referring to the optional alternative of personal service of the notice, that is, when "served on the employer by delivering it to him". Appellant correctly contends, however, that the carrier failed to sustain the burden of proving that notice of cancellation was filed with the chairman of the board at such time as effectively to cancel the policy prior to the date of the accident. We are constrained to conclude that the striking deficiency, hereinbefore noted, in the board's decision, in failing to find when

such notice was filed, or even that it was timely filed, occurs by reason of the fact that despite some considerable investigation and the exhaustive examination and cross-examination of the responsible supervisors of the unit of the Workmen's Compensation Board charged with enforcement, including cancellation procedures, no evidence whatsoever was elicited as to the date of filing of the card, which was discovered among the board's files long after the accident, bearing no "in-stamp" or other indication of when it was received. (Coincidentally or not, an investigation of sorts had disclosed that respondent carrier's employees did not always file such notices promptly "and had been prone to save their cancellation cards and then send in hundreds at a time".) The carrier offered no testimony or other proof whatsoever of any act on its part with reference to filing and no evidence whatsoever of any of its office procedures or other practices from which a filing might be inferred; and rested its case solely on the fact that ultimately an unauthenticated card had been turned up in the board's file. The board's office supervisor did not have "any idea" when the notice was filed, even whether it was filed in 1966; it was not a copy of the notice sent the employer; and it was not stamped with the date of its receipt, in accordance with the board's practice. There was proof of the practice of carriers generally either to personally deliver such notices and have duplicates stamped or to mail originals and duplicates with self-addressed envelopes for the return of stamped duplicates, this going back to the time of a 1956 directive or outline of "standard practices" signed by the chairman and urging that these procedures be followed by carriers for preservation of essential proof of effective cancellation. Relative to this procedure, one of the supervisors testified: "What our practice is to in stamp each one of these cards and file them. * * * If a carrier submits a duplicate of the C-224, notice of cancellation, we will in stamp that, too. We will send it back to them or give it to them personally, if they deliver it personally. We have maintained to the carriers that this is their record of having filed with the Chairman and that a burden is upon the carrier to produce this in stamp copy of the cancellation notice to prove a filing with the Chairman." The testimony that it had been discovered that at some time — when, does not appear — some cards (not "many", as the board decision has it) had not been stamped, does not supply evidence of timely filing here; nor, as has been suggested, does the possibility of such errors on the part of board employees become a relevant factor in the decision of this case or warrant the shifting of responsibility for claimant's compensation to her employer, upon the exoneration of the carrier whose own apparent negligence in failing to maintain appropriate records of its own, or to obtain and preserve authenticated copies of the board's, resulted in its inability to sustain the burden of proof cast upon it. The board's decision as respects coverage and cancellation is unsupported by substantial evidence and must be reversed. Decision reversed, with costs to appellant employer against respondent carrier, and case remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith. Gibson, P. J., Herlihy, Reynolds, Aulisi and Greenblott, JJ., concur in memorandum by Gibson, P. J.